UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                    Plaintiff,

v.                                                    Case No. 14-CR-175-JPS

TIMOTHY R. ANDERSON,

                                                      **ORDER**

                    Defendant.

1.   **INTRODUCTION**

On May 20, 2020, defendant Timothy R. Anderson filed a motion for compassionate release. (Docket #34). The government responded and filed a motion to seal, as the response contained sensitive personal information about the defendant. (Docket #36). Defendant filed a reply, rendering the motion fully briefed. (Docket #38). For the reasons discussed herein, the Court grants Defendant's motion for compassionate release. The Court will also grant the government's motion to seal.

2.   **RELEVANT FACTS**

Defendant had several prior offenses that he conducted throughout his twenties and thirties, including theft, battery, assault, robbery, and carjacking. He committed the offense for which he is currently incarcerated in 2014, when he was found on his front porch carrying his roommate's unloaded revolver. His projected release date is in 2025.

Defendant also suffers from several conditions that tend to result in severe disease and death among COVID-19 patients. These include diabetes, high blood pressure, high cholesterol, obesity, and an enlarged

heart. He also requires a prosthesis or a wheelchair for mobility because he lost his leg in a shooting.

Defendant is currently held at the Federal Correctional Facility at Greenville ("FCI-Greenville"). As of the parties' briefing, there were no recorded cases of COVID-19 at FCI-Greenville. Nevertheless, Defendant is fearful of his health should he contract COVID-19, and has sought refuge at the institution's Security Housing Unit ("SHU"), where social distancing is more practicable. However, the SHU is not well-equipped to accommodate inmates with disabilities. Additionally, BOP staff have not been able to ensure that Defendant receives a daily shower while in the SHU.

### 3. LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A)(i), the Court can modify a term of imprisonment, after the defendant has exhausted his administrative rights, if "extraordinary and compelling reasons warrant such a reduction." The reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission." *Id*. § 3582(c)(1)(A).

Prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. *Id.* Pursuant to § 3553(a), when determining the sentence to be imposed the Court shall consider, among other things: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment.

4. **ANALYSIS**

   4.1. **Exhaustion**

Before granting a motion for compassionate release, the defendant must either "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or at least 30 days must have lapsed "from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). In its brief, the government acknowledges that the motion has been exhausted. (Docket #37 at 5).

   4.2. **Extraordinary and compelling reasons**

The parties somewhat dispute whether Defendant has established that he has an extraordinary and compelling reason warranting his release. Commentary to the Sentencing Guidelines explains that "extraordinary and compelling reasons exist" when "the defendant is. . .suffering from a serious physical or medical condition [] that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he. . .is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I). The government notes that "if an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19," that condition may be serious enough to rise to the level of extraordinary circumstances, "even if that condition would not have constituted an extraordinary and compelling reason absent the risk of COVID-19." (Docket #37 at 8–9) (quotations omitted).

The government acknowledges that Defendant has "several medical conditions that elevate his risk of severe illness should he contract COVID-19." (Docket #37 at 2). The government even notes that "as a technical

Page 3 of 8
Case 2:14-cr-00175-JPS   Filed 07/28/20   Page 3 of 8   Document 39

matter," he may be eligible for compassionate relief. *Id.* at 9. However, it is their position that Defendant is not currently at risk because there are no reported cases of COVID-19 in the inmate population at FCI-Greenville, where he is currently held. Moreover, they contend that Defendant has not shown that his current release plan would decrease his risk of contracting COVID-19.

The Court disagrees with the government and finds that Defendant has established extraordinary and compelling reasons for his release. According to the Centers for Disease Control and Prevention ("CDC"), those with serious heart conditions, obesity (defined as a person with a body mass index of 30 or higher), or type 2 diabetes "are at increased risk of severe illness from COVID-19."[1] Additionally, persons with hypertension or high blood pressure "might be at an increased risk for severe illness from COVID-19." *Id.* It is undisputed that Defendant suffers from all of the aforementioned conditions.

Although Defendant currently does not have COVID-19, if he were to contract COVID-19, the consequences would likely be dire. Courts have recognized that an inmate's high-risk medical conditions may warrant compassionate release due to the pandemic even when there are no reported cases at their institution at the moment. *United States v. Atkinson*, No. 2:19-CR-55 JCM (CWH), 2020 WL 1904585, at *2–4 (D. Nev. Apr. 17,

---

[1] Ctrs. for Disease Control and Prevention, *Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 22, 2020).

2020); *United States v. Ben-Yhwh*, No. 15-830-LEK, 2020 WL 1874125, at *4–6 (D. Haw. Apr. 13, 2020); *United States v. Asaro*, No. 17-CR-127 (ARR), 2020 WL 1899221, *3, *7–8 (E.D.N.Y. Apr. 17, 2020); *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *6–7 (E.D. Mich., May 7, 2020).

As Defendant has pointed out, he is currently in a "precarious" situation, to say the least. The general inmate population is very risky due to his underlying and ongoing health issues, but the SHU—where he has sought refuge—is inadequate due to his disabilities. Moreover, there is no indication that BOP is well-equipped to handle an outbreak at FCI-Greenville, to say nothing of whether the BOP could effectively address Defendant's medical needs. If anything, the record suggests it cannot: Defendant was not sent to a medical center despite the fact that it was recommended in the judgment. (Docket #31 at 2). Additionally, since he has been held in the SHU, the BOP has been unable to ensure that Defendant receive daily showers. At a time when hygiene is paramount to avoiding the spread of COVID-19, this is deeply troubling. The Court is not obligated to wait for COVID-19 to infect FCI-Greenville and imperil Defendant's life; it may grant relief as circumstances currently exist.

### 4.3. § 3553(a) Factors

The government argues that the § 3553(a) factors weigh against Defendant, particularly in light of his lengthy prior criminal history. Specifically, the government's contention is that Defendant remains a danger to the community, and therefore is not an appropriate candidate for compassionate release.

Defendant is currently serving a ten-year sentence for being a felon in possession of a firearm under 18 U.S.C. § 922(g). During the commission of the crime in question, Defendant was carrying his roommate's unloaded

revolver while sitting on his front porch. He was cooperative with the police, and there is no indication that he threatened anybody with violence.

However, this exchange must be contextualized with the rest of Defendant's conduct. Defendant's criminal history is not only lengthy, it also spans a lengthy period of his life. (Docket #25 at 16–18) (showing a fourteen-year period of time between the commission of a robbery and a carjacking). The government argues that Defendant's age and his disability do not give rise to the inference that he will not recidivate—specifically because he was 49 years old when the instant crime was committed, and because he committed two robberies *after* the wound that resulted in his lost limb, including one as recently as 2006. *See id*. Moreover, Defendant has not even served half of his sentence. *See United States v. Jimison*, No. 4:08-CR-11-DPJ-LRA, 2020 WL 3213429, at *4 (N.D. Miss. June 15, 2020) (noting that because the defendant had only served a "small fraction" of his sentence, "immediate release. . .would not 'reflect the seriousness of the offense' or the need 'to provide just punishment for the offense' . . . .") (quoting 18 U.S.C. § 3553(a)(2)(A); *and United States v. Garcia*, No. 16-cr-719-2 (RJS), 2020 WL 2539078, at *3 (S.D.N.Y. May 19, 2020) ("Cutting [the defendant's] sentence in half would undermine its deterrent effect and would likely increase [the defendant's] chance of recidivism."). The Court notes, however, that if Defendant's federal sentence had run concurrently to his state revocation sentence, he would already have served 70% of that sentence.

There are facts that weigh in Defendant's favor, as well. First, he has a close, supportive family with whom he remains in contact. He has a release plan that entails living in his parent's basement, which is accessible to him, and which he will have entirely to himself. Second, when Defendant

Page 6 of 8
Case 2:14-cr-00175-JPS   Filed 07/28/20   Page 6 of 8   Document 39

is released, he will be on federal supervised release, and on state supervision until 2039, which should further curb the risk that he will reoffend or otherwise be a danger to the public. Third, Defendant's disciplinary record was spotless for years until the COVID-19 pandemic. Beginning on March 25, 2020, Defendant refused to work due to his desire to practice social distancing. This refusal to work appears to be his only infraction. In other words, there is no evidence of violent behavior during his period of incarceration. Finally, Defendant's own health bears on his likelihood to recidivate; not only does he have limited mobility, but he also has serious health concerns including diabetes and an enlarged heart. Indeed, his period of incarceration has been characterized by numerous health issues which have worsened over time. Defendant's reply brief points out that he will "likely qualify for disability[,] providing him with an economic ability to provide for himself, something he did not have in the past[.]" (Docket #38 at 10). Most of Defendant's crimes, while violent, also suggest poverty: i.e., robbery, carjacking, theft. Thus, Defendant's access to some form of financial support by way of his disability, as well as his ability to live at home, also decreases the likelihood that Defendant will be a danger to his community.

After weighing these factors and considering how to best balance the goals of punishment, rehabilitation, and deterrence, the Court concludes that the best way to punish Defendant for his offense and deter him from future criminal conduct, while not turning that punishment into a potential death sentence, is to grant his motion for compassionate release but impose an eighteen-month long period of home confinement as part of his two-year term of supervised release. *United States v. Grubbs*, No. CR16-228 TSZ, 2020 WL 3839619, at *3 (W.D. Wash. July 8, 2020) ("The Court, however, is

persuaded that the potentially dire consequences to defendant's health if he violates the conditions of supervised release and is returned to custody will motivate him to be compliant and cooperative."). Thus, after considering the § 3553(a) factors, the Court grants Defendant's motion and reduces his term of imprisonment to time served. The Court reduces Defendant's sentence conditioned upon a modification of the terms of Defendant's supervised release to add a requirement that he serve eighteen months of that release on home detention.

Accordingly,

**IT IS ORDERED** that Defendant's motion for compassionate release (Docket #34) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the government's motion to seal (Docket #36) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Timothy Anderson's term of imprisonment is reduced to "time served";

**IT IS FURTHER ORDERED** that Defendant's conditions of supervised release are modified to include a term of home detention of eighteen (18) months; and

**IT IS FURTHER ORDERED** that the Bureau of Prisons take all steps necessary to immediately release Defendant Timothy Anderson from incarceration pursuant to the amended judgment, which follows.

Dated at Milwaukee, Wisconsin, this 28th day of July, 2020.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge

Page 8 of 8
Case 2:14-cr-00175-JPS   Filed 07/28/20   Page 8 of 8   Document 39